**Sealed**

Public and unofficial staff access
to this instrument are
prohibited by court order.

AO 91 (Rev. 11/11)  Criminal Complaint

United States Court
Southern District of Texas
FILED

# UNITED STATES DISTRICT COURT

### for the

### Southern District of Texas

AUG 16 2016

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| Victor Hugo Valdez Pinon | ) | |
| | ) | **H16-1204M** |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   1/1/2009 to on or about 12/31/2012   in the county of _____Harris_____ in the
_____Southern_____ District of _____Texas_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC Section 371 | Conspiracy to violate the Foreign Corrupt Practices Act |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Corbin Wickman, Special Agent, HSI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  8·16·16

_____
*Judge's signature*

City and state:            Houston, Texas            Nancy K. Johnson, United States Magistrate Judge
_____
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

```
Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order.
```

UNITED STATES OF AMERICA

v.

VICTOR HUGO VALDEZ PINON,

Defendant.

Case No. **H16-1204M**

**UNDER SEAL**

### AFFIDAVIT IN SUPPORT OF
### CRIMINAL COMPLAINT AND ARREST WARRANT

I, Corbin Wickman, ("Affiant"), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AFFIANT'S BACKGROUND

1.      I am a Special Agent with Homeland Security Investigations ("HSI"). I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for federal felonies.

2.      I have been employed by HSI as a Special Agent since 2005. During my tenure as an HSI Special Agent, I have participated in numerous criminal investigations involving intellectual property, financial crimes, fugitive apprehensions, white collar crime, as well as other unlawful activities, to include the Foreign Corrupt Practices Act. During my time as an HSI Special Agent I have also participated in numerous searches, arrests, and seizure warrants involving a variety of federal offenses. I am currently assigned to the Houston, Texas Division of HSI.

1

3.      I make this affidavit in support of a criminal complaint and arrest warrant related to defendant, **VICTOR HUGO VALDEZ PINON ("VALDEZ")**, engaging in a conspiracy to violate the Foreign Corrupt Practices Act. The information contained in this affidavit is based upon my personal knowledge, as well as information obtained from other sources, including (a) statements made or reported by various witnesses, including cooperating witnesses, with knowledge of relevant facts; (b) audio and video recordings of conversations between **VALDEZ** and a cooperating witness; (c) my review of publicly available information relating to **VALDEZ** and other relevant individuals and entities; (d) documents obtained from various sources; and (e) discussions with other law enforcement officials. I have limited this affidavit to those facts necessary to support a finding of probable cause that **VALDEZ** violated Title 18, United States Code, Section 371 (conspiracy to commit an offense, specifically in this case to violate the Foreign Corrupt Practices Act). Accordingly, this affidavit does not include a complete recitation of the entire investigation or of each and every fact and matter observed by or known to law enforcement relating to the subject matter of this investigation. Additionally, unless otherwise noted, wherever in this affidavit I assert that a statement was made by an individual, that statement is described in substance and in part, and is not intended to be a verbatim recitation of the entire statement made by the individual.

## PROBABLE CAUSE

### *Entities and Individuals*

4.      The Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15, United States Code, Sections 78dd-1, *et seq.*, was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value, directly or indirectly, to a foreign

official for the purpose of obtaining or retaining business for, or directing business to, any person.

5.      Based on public source searches, as well as documents the government has obtained in this investigation, including official Foreign LEA documents, "Foreign LEA" as referenced in this affidavit was a government-controlled, federal law enforcement agency in Mexico, and as part of its operations, Foreign LEA maintained a number of aircraft used for transportation purposes and employs pilots.

6.      Based on documents the government has obtained in this investigation, including official Foreign LEA documents and United States visa-related documents, "Foreign Official 1," "Foreign Official 2," and "Foreign Official 3," were employees and officers of Foreign LEA with responsibility for maintaining Foreign LEA's aircraft from at least on or about January 1, 2009 through at least on or about December 31, 2012.

7.      The FCPA, Title 15, United States Code, Section 78dd-2(h)(2), in relevant part, defines a "foreign official" as "any officer or employee of a foreign government or any department, agency, or instrumentality thereof, . . . or any person acting in an official capacity for or on behalf of any such government or department, agency, or instrumentality[.]"  During the relevant time period, therefore, Foreign Official 1, Foreign Official 2, and Foreign Official 3 were each a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2).

8.      Based on public source searches and documents Aviation Corporation A has provided to the government, "Aviation Corporation A" was a United States company, with its principal place of business in the United States, namely in the Southern District of Texas. Aviation Corporation A provided maintenance, repair, overhaul, and related services to

3

customers in the United States and Mexico, including to Foreign LEA, throughout the time period from at least on or about January 1, 2009 through at least on or about December 31, 2012.

9.      At all relevant times, Cooperating Witness 1 ("CW1") was a citizen of the United States and resident of Texas, and was President and a part owner of Aviation Corporation A. CW1 has signed a cooperating plea agreement that would permit the government in its discretion to recommend a reduced sentence if CW1 truthfully and substantially assists the government's continuing investigation into **VALDEZ** and others.

10.     Defendant **VALDEZ** was a sales agent for Aviation Corporation A, which paid **VALDEZ** a commission to bring Mexican customers needing aircraft parts or maintenance services to Aviation Corporation A from at least on or about January 1, 2007 to the present.

11.     The FCPA, Title 15, United States Code, Section 78dd-2(h)(1), in relevant part, defines a "domestic concern" as "any individual who is a citizen, national, or resident of the United States;" and "any corporation, partnership, association, joint-stock company, business trust, unincorporated organization, or sole proprietorship which has its principal place of business in the United States, or which is organized under the laws of a State of the United States[.]"   Therefore, at all relevant times, Aviation Corporation A and CW1 were each a domestic concern, and CW1 and **VALDEZ** were each an employee or agent of a domestic concern, as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

### The Agreement to Engage in a Scheme to Bribe Foreign Officials

12.     CW1 has been cooperating with agents of the United States for the last several months, and over this time period CW1 has told the government that when **VALDEZ** was acting as a sales agent for Aviation Corporation A, CW1 and **VALDEZ** paid bribes to representatives

of Mexican customers, including Mexican government agencies, so that those representatives would steer business to Aviation Corporation A. As explained more fully below, the information provided by CW1 is corroborated by documents obtained from Aviation Corporation A, bank records, travel records, and single-party consent recordings of conversations involving **VALDEZ** and CW1.

13.     According to CW1, individuals at Aviation Corporation A, including CW1, reached an agreement with **VALDEZ** to pay kickbacks to Foreign LEA officials – including Foreign Official 1, Foreign Official 2, and Foreign Official 3 – on certain sales that Aviation Corporation A made to Foreign LEA.

14.     The government has obtained e-mails between CW1, **VALDEZ** and others, showing that CW1 and **VALDEZ** communicated through e-mail about their ongoing agreement regarding the Foreign LEA kickback scheme.

15.     CW1 told the government – and e-mails between CW1 and **VALDEZ**, as well as internal Aviation Corporation A documents show – that Aviation Corporation A increased the prices it charged Foreign LEA to include the money that Aviation Corporation A agreed to pay the three foreign officials.

16.     E-mails between CW1 and **VALDEZ**, internal Aviation Corporation A documents, and bank records show that after Aviation Corporation A received payment from Foreign LEA, Aviation Corporation A would wire money to or deposit a check into one of **VALDEZ**'s bank accounts from Aviation Corporation A's account in the Southern District of Texas.

17.     CW1 has explained to the government that the amounts Aviation Corporation A deposited into **VALDEZ**'s accounts included a 20% "commission," which consisted of a 5%

commission for **VALDEZ** as well as a 15% total kickback (5% each) for the three foreign officials. The government has obtained e-mails between CW1 and **VALDEZ**, internal Aviation Corporation A documents, and bank records that corroborate this aspect of the scheme. In addition, on or about April 5, 2016, when CW1, in a consensually recorded conversation, asked **VALDEZ** the manner in which **VALDEZ** paid the 5% each for the three foreign officials, **VALDEZ** responded: "Most of the time, cash, most of the time. I meet with them and I give the cash, and nobody see, in different area."

## Overt Acts

18.     Based on e-mails obtained from Aviation Corporation A, on or about December 3, 2010, **VALDEZ** emailed CW1 the following regarding a specific business deal Aviation Corporation A had done with Foreign LEA: "Well you know at the beginning of the deal was 20% of the total of each invoice, 5% for each [the first name of Foreign Official 1], [the first name of Foreign Official 2], [the first name of Foreign Official 3] and I. But you tell me."

19.     On or about February 29, 2012, Aviation Corporation A made a commission payment to **VALDEZ** which, internal Aviation Corporation A documents show, amounted to approximately 20% of certain payments Foreign LEA made to Aviation Corporation A.

20.     In another e-mail obtained from Aviation Corporation A, on or about February 29, 2012, **VALDEZ** wrote CW1 about an accounting discrepancy "regarding the consulting fee for [Foreign LEA]" that Aviation Corporation A owed him under the agreement. **VALDEZ** wrote: "Please my friend can you check with [Aviation Corporation A bookkeeper] . . . I know they are specting [*sic*] receive more, I don't have the exactly amount they are waiting but [the first name of Foreign Official 1] has they [*sic*] own numbers that I should discuss with him."

## CONCLUSION

21.    Based on the foregoing, I believe that probable cause exists to issue a criminal complaint and arrest warrant charging **VICTOR HUGO VALDEZ PINON** with violating Title 18, United States Code, Section 371 (conspiracy to violate the Foreign Corrupt Practices Act).

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

Corbin Wickman
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on ___Aug 16___, 2016 and I find probable cause.

NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE

7